## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

———————————————————————
|                                                  | :  |                |
| ZAHIR BODDY-JOHNSON,                             | :  | CIVIL ACTION   |
|                                     Petitioner,  | :  |                |
|                                                  | :  |                |
| v.                                               | :  | NO. 18-0198    |
|                                                  | :  |                |
| ROBERT GILMORE,                                  | :  |                |
| SUPERINTENDENT, SCI-GREENE, et al.,              | :  |                |
|                                    Respondents.  | :  |                |
———————————————————————:

### REPORT AND RECOMMENDATION

**Henry S. Perkin, M.J.**                                   **November 16, 2020**

Presently before the Court is the *pro se* Petition for Writ of Habeas Corpus filed pursuant to 42 Pa. C.S.A. § 2254.   Petitioner is currently incarcerated in State Correctional Institution Greene located in Waynesburg, Pennsylvania.   For the reasons that follow, it is recommended that the Petition should be denied with prejudice and dismissed without an evidentiary hearing.

## I.     FACTS AND PROCEDURAL HISTORY.

The facts as set forth in the trial court opinion are:

On February 17, 2008 Philadelphia Housing Authority Police Officer Craig Kelley was on duty monitoring the entrance to the public housing residence located [at] 301 Queen Lane, Philadelphia, PA when he heard a knock on the steel door leading into the patrol booth where he was stationed situated in the lobby area of the residence. Officer Kelley testified that when he opened the door to the patrol booth he found a male wearing a scarf partially covering his face standing in front of him with the muzzle of a rifle pointed at his face. The male's finger was on the trigger of the rifle and the male stated "Don't move." The assailant then began shooting Officer Kell[e]y, whereupon Kell[e]y closed the door to the booth and he was spun around by the rifle fire and knocked to the floor. The male continued to fire his weapon at Kell[e]y while he lay on the floor beneath the window at his duty station as glass and debris sprayed over him. Rifle bullets penetrated his protective vest and struck

Kell[e]y's left torso.

In spite of his injuries, Officer Kelley was able to access his radio and relay that he was down, needed assistance, and required a medic. Kell[e]y was unable to get a response however he was then able to get to a nearby telephone and he called the Housing Authority radio room for help. Philadelphia police officers responded shortly thereafter and Kell[e]y was immediately transported to Temple University Hospital.

Dr. Amy Goldberg testified that she was called to attend to Officer Kell[e]y at Temple University Hospital and that she found him with a large wound to the left side of his chest and abdomen. Kell[e]y was treated and admitted to the hospital where he remained for three days. Upon his release from the hospital, Kell[e]y was prescribed pain medication and was further treated at Temple Wound Clinic and required the services of a home care nurse three times a week for approximately two months. He continues to receive physical therapy and continues on pain medicines.

Philadelphia Police Officer Robert Lee responded to the police radio call that Officer Kelley had been shot. Lee began patrolling the area near the crime scene whereupon [Petitioner] was observed wearing clothing that fit the description relayed over the radio. [Petitioner] was stopped and [asked] where he was coming from. [Petitioner] responded that he was coming from 301 Queen Lane where his aunt lived. Lee testified that his next question to [Petitioner] was whether [Petitioner] knew that a police officer had been shot, whereupon [Boddy-Johnson] responded, "No, I did not know a police officer had got shot a[t] 301 Queen Lane, but I heard the gunshots." Lee had not identified the location of the shooting of Officer Kell[e]y before [Petitioner's] response. Lee advised police radio that he had a potential suspect and he was then instructed to transport [Petitioner] to Temple University Hospital. Upon arriving at the hospital, Lee was unable to meet with Officer Kelley to attempt to make an identification and was further instructed to transport [Petitioner] to the homicide unit at police headquarters.

Detective George Pirrone arrived at the scene shortly after the shooting and determined that video surveillance had been taken of the area from a camera at the Hung Hing Restaurant located a block away. The video, which was introduced into evidence, revealed a male running past the restaurant carrying a rifle in his right hand while bystanders entered the restaurant and hid behind a counter. In the area of [Petitioner's] arrest, and near the location shown in the video, an Erinco SK assault rifle, a black nylon bag containing live rounds of ammunition along with other contraband was recovered. A bank card found at the scene was traced to

[Petitioner]. Other ballistics and DNA evidence linked [Boddy-Johnson]
to the shooting of Officer Kell[e]y.

       Shortly after [Petitioner] was transported to police headquarters,
Detective Patrick Mangold and Detective McNamee conducted an
interview with him. [Petitioner] was first provided Miranda warnings and
he signed the standard form indicating that he had been read his rights,
that he understood them, and that he was voluntarily offering his
statement. Thereafter, [Petitioner] admitted that he shot Officer Kelley,
giving a detailed explanation.

       [Petitioner] signed the statement at the end of the interview.
Detective Mangold testified that after the interview was completed,
[Petitioner's] aunt, Miriam Davis, arrived and came into the interview
room and that she read over the statement with [Petitioner] and then she
also signed it[.]

       The defense offered evidence of [Petitioner's] reputation for being
peaceful, truthful, and law-abiding. The defense also offered testimony
that the glass enclosure of Kelley's patrol booth had been previously
damaged with bullet holes from prior occasions.

*Commonwealth v. Boddy-Johnson*, No. CP-CR-0004485-2008, slip op. at 2-4 (Com. Pl.

Ct. Phila. Cty. Apr. 30, 2010) (footnote and record citations omitted); Resp., Ex. A.

Petitioner gave the following account of the crimes and his participation in them in his

confession which was read for the jury:

     Question: Were you present when Officer Kelley was shot tonight while
he was working inside of the security booth at 301 Queen Lane?

     Answer: Yes.

     Question: Can you tell me who shot him?

     Answer: I did.

     Question: Can you tell me why you shot him?

     Answer: I was going to rob him. When he opened the door to the booth, I
shot the gun one time and he closed the door. Then I shot two more times
while he was inside of the booth. I was shooting through the glass, but I

don't -- The bullets went through. I was just shooting.

Question: Can you explain to me exactly what happened?

Answer: I went to the door of the booth and I knocked on the door. As soon as he
opened the door, I pointed the gun at him. After I pointed the gun at him, he tried to close the door and that is when I shot. The gun went off.

* * * * *

He got the door closed and I just shot at the booth because I thought he was going to shoot at me.

[Defense counsel]: Your Honor, I ask him to finish the whole statement.

[The prosecutor]: He said he got the door closed. And what did he say after that?

Answer: And I just shot at the booth because I thought he was going to shoot at me. I ran out of the building and onto Queen Lane. I dropped the bag that I had the gun in on Queen Lane. I kept on moving and I dropped the gun at the corner of the next block, I think at Morris and Queen. I went up the block and I just tried to chill. Then while I was still on the block, the cops stopped me and brought me here.

* * * * *

Question: When you told me that you were going to rob the officer, what were you going to take from him?

Answer: I was going to take the laptop that was in there, and I was going to try to take his gun.

Question: What were you going to do with the things that you took from the officer?

Answer: I was going to sell them and spend the money for restitution for my stolen car case.

Question: When did you decide to do this?

Answer: I saw him in there last Sunday, but I really didn't think about it. Then today I saw him again and I just decided to do it.

4

Question: What kind of gun did you have today and how long have you had it?

Answer: It's an SKS, a rifle. I had it about a month.

\* \* \* \* \*

Question: Do you know the officer that was shot today?

Answer: No, I don't.

N.T., 6/9/09, pp. 55-59. Petitioner's trial counsel did not dispute that Petitioner committed the acts with which he was charged, but argued to the jury that Petitioner contested that he acted with the intent to kill necessary to sustain an attempted murder conviction.   Counsel also told the jury that Petitioner was willing to accept responsibility and punishment for the aggravated assault and firearms charges. *See, e.g.*, N.T., 6/10/09, at 12-13 ("When it comes to aggravated assault, the gun charges, we concede those charges....Out of all of the facts that you heard, out of all of the evidence that was shown to you by the DA, or the evidence that wasn't shown to you, there was no way that you can come to the conclusion that there was an intent to kill. What you heard here is was a botched robbery by a 17-year-old kid who didn't know what the heck he was doing….he did not intend to kill Officer Kelley and that's what the charge of attempted murder talks about.").

The jury convicted Petitioner of attempted murder, aggravated assault and the firearms charges, and the trial court sentenced Petitioner to an aggregate prison term of 22 1/2 to 47 years.   Petitioner filed a timely appeal with the Pennsylvania Superior Court. On September 29, 2010, the Superior Court affirmed the judgment of sentence,

agreeing with the trial court that Petitioner's confession was voluntary and properly admitted at trial; that the reference in his confession to his "stolen car case" and the resulting restitution obligation was relevant and properly admitted as evidence of Petitioner's motive to commit the charged crimes; that the evidence was sufficient for the jury to find that Petitioner acted with the intent to kill Officer Kelley; and that the evidence was sufficient to sustain Petitioner's conviction for attempted murder. *Commonwealth v. Boddy-Johnson*, No. 2910 EDA 2009, slip op. (Pa. Super. Ct. Sept. 29, 2010); Resp., Ex. B. On February 8, 2011, the Pennsylvania Supreme Court denied the petition for discretionary review. *Commonwealth v. Boddy-Johnson*, 17 A.3d 1250 (Pa. 2011) (table).

Petitioner filed a timely *pro se* petition under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. C.S. §§ 9541, *et seq.* Counsel was appointed and later amended the petition. Petitioner claimed in his amended PCRA petition that, even if the reference in his confession to his prior automobile theft case and resulting restitution obligation was properly admitted as evidence of motive, trial counsel rendered constitutionally ineffective assistance by declining the trial court's offer of a limiting instruction. The limiting instruction proposed by the trial court was that the jurors could consider the auto theft and restitution reference only as evidence of motive, rather than as evidence that Petitioner had a propensity to commit crimes. Trial counsel consulted with Petitioner before finally declining the offer of a limiting instruction. N.T., 6/10/09, at 28.

On March 4, 2016, Judge Gwendolyn N. Bright, sitting as the PCRA court, denied the amended PCRA petition, concluding that Petitioner failed to show either that the

6

decision to decline a limiting instruction was professionally unreasonable or that counsel's supposedly deficient performance resulted in constitutional prejudice. *Commonwealth v. Boddy-Johnson*, No. CP-51-CR0004485-2008, slip op. at 6 (Com. Pl. Ct. Phila. Cty. Mar. 4, 2016); Resp., Ex. C.   The PCRA court held that the reference to Petitioner's prior "stolen car case" was "minimally significant" and that counsel reasonably could have thought a limiting instruction would "serve only to highlight" it. *Id.* On appeal, the Superior Court affirmed the denial of PCRA relief, agreeing that Petitioner failed to show a reasonable probability that the outcome of the trial would have been different but for counsel's supposedly deficient performance. *Commonwealth v. Boddy-Johnson*, No. 3029 EDA 2015, 2017 WL 1050407 (Pa. Super. Ct. Mar. 20, 2017); Resp., Ex. D. The Pennsylvania Supreme Court declined discretionary review on September 12, 2017. *Commonwealth v. Boddy-Johnson*, 170 A.3d 1044 (Pa. 2017) (table).

　　　　The instant Petition for Writ of Habeas Corpus was thereafter docketed containing two claims of ineffective assistance of counsel: (1) trial and direct appeal counsel were ineffective by failing to argue that the prosecution failed to prove beyond a reasonable doubt all elements of the crime of aggravated assault; and (2) trial counsel was ineffective by declining the court's offer of a limiting instruction that evidence of and references to Petitioner's "stolen car case" and his restitution obligation could be considered only for that purpose.   The case was referred for preparation of a Report and Recommendation by the Honorable Cynthia M. Rufe. In the Response to the Petition, counsel for the Respondents contend that the claims are procedurally defaulted and meritless.   Petitioner

filed a Traverse to the Response, directly responding to the contentions of the Respondents.

## II.    STANDARD OF REVIEW.

### A.    Petitions for Writ of Habeas Corpus.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides that a writ of habeas corpus for a person serving a state court sentence shall not be granted unless (I) the state court's resolution of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" and (ii) the claim is exhausted.[1]   *See* 28 U.S.C. § 2254(d)(1); *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002); *Berryman v. Morton*, 100 F.3d 1089, 1103 (3d Cir. 1996).   "As long as the reasoning of the state court does not contradict relevant Supreme Court precedent,

---

[1]      Exhaustion requires that the claims have been presented at all available levels of the state judicial system before being presented in a habeas corpus petition. *See Anderson v. Harless*, 459 U.S. 4, 7 (1982). If a petition's claims have not been exhausted, and a petitioner is time-barred from presenting those claims in state court, the claims are procedurally defaulted and will not be reviewed on the merits. 28 U.S.C. § 2254(b)(1)(A); *see O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

However, a procedurally defaulted claim may still succeed where a petitioner can show either (I) cause for the default and actual prejudice, or (ii) that the failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 749 (1991). Cause exists when a petitioner demonstrates "some objective factor external to the defense impeded efforts to comply with the State's procedural rule." *Slutzker v. Johnson*, 393 F.3d 373, 381 (3d Cir. 2004) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)*); Cristin v. Brennan*, 281 F.3d 404, 412 (3d Cir.), *cert. denied*, 537 U.S. 897 (2002) (quoting *Coleman*, 501 U.S. at 753). Prejudice means that the alleged error worked to the petitioner's actual and substantial disadvantage.   *United States v. Rodriguez*, 153 F. Supp. 2d 590, 594 (E.D. Pa. 2001) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)).

A fundamental miscarriage of justice occurs if a petitioner presents new evidence and shows that "it is [now] more likely than not that no reasonable juror would have convicted him." *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Keller v. Larkins*, 251 F.3d 408, 415-416 (3d Cir. 2001). The burden is on the petitioner to show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup*, 513 U.S. at 327.

AEDPA's general rule of deference applies." *Priester v. Vaughn*, 382 F.3d 394, 398 (3d Cir. 2004) (citing *Early v. Packer*, 537 U.S. 3 (2002) and *Woodford*, 537 U.S. 19).

An objectively unreasonable application does not require merely that a state court's decision be erroneous or incorrect, but also that it be unreasonable. *Williams v. Taylor*, 529 U.S. 362, 407 (2000). Clearly established federal laws are the holdings, not the dicta of the Supreme Court. *Id.* at 390.

### B.   Exhaustion and Procedural Default.

A petitioner may only succeed in a habeas corpus petition if he has first exhausted all remedies available in the state courts.   28 U.S.C. § 2254(b)(1)(A).   To satisfy this requirement the petitioner must "fairly present" his claims to the state courts allowing the state courts a meaningful opportunity to correct alleged constitutional violations. *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (requiring "one complete round" of the state's appellate procedures).   Petitioner bears the burden of proving the exhaustion of all available remedies for each claim. *Toulson v. Beyer*, 987 F.2d 984, 987 (3d Cir. 1993).

Claims that are not exhausted will become procedurally defaulted, and the petitioner is not entitled to a review on the merits.   *O'Sullivan*, 526 U.S. at 848.   Review of a procedurally defaulted claim is permitted in extremely narrow circumstances, where the petitioner can show either (1) cause for the default and actual prejudice or (2) the failure to consider the claim will result in a fundamental miscarriage of justice.   *Coleman v. Thompson*, 501 U.S. 722, 749 (1991).

"Cause" for procedural default is shown when the petitioner demonstrates "some

objective factor external to the defense impeded counsel's efforts to comply with the state procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986).   "Actual prejudice" occurs when the errors at trial "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."   *Id.* at 494 (quoting *United States v. Frady*, 456, U.S. 152, 179 (1982)). A "fundamental miscarriage of justice" occurs when a petitioner presents new evidence of his actual innocence such that "it is [now] more likely than not that no reasonable juror would have convicted him." *Schlup v. Delo*, 513 U.S. 298, 327 (1995).

In *Martinez v. Ryan*, 132 S.Ct. 1309 (2012), the Supreme Court examined whether ineffective assistance at the initial review of a collateral proceeding on a claim of ineffective assistance at trial can provide cause for a procedural defect in federal habeas proceedings. *Id.* at 1315. This case recognized a narrow exception to the *Coleman* rule (that ineffective assistance of counsel at the state collateral review level could not establish cause to excuse procedural default), holding that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Martinez*, 132 S.Ct. at 1315.

Thus, a PCRA claim for ineffective trial counsel during an initial state collateral review may qualify as "cause" to excuse the default if: (1) as a threshold matter, the state requires a prisoner to bring ineffective counsel claims in a collateral proceeding; (2) the state courts did not appoint counsel at the initial review collateral proceeding for an ineffective- assistance-at-trial claim; (3) where appointed counsel at the initial-review

collateral proceeding was ineffective under *Strickland v. Washington*, 466 U.S. 668

(1984) and (4) the underlying ineffective-assistance-at-trial claim is substantial.

*Martinez*, 132 S.Ct. at 1315-18.

### C.    Ineffective Assistance of Counsel.

Claims for ineffectiveness of counsel are governed by *Strickland*.[2] Under

*Strickland*, counsel is presumed effective, and to prevail on an ineffectiveness claim, a

petitioner must "overcome the presumption that, under the circumstances, the challenged

action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689. Given this

presumption, a petitioner must first prove that counsel's conduct was so unreasonable

that no competent lawyer would have followed it, and that counsel has "made errors so

serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth

Amendment." *Id.* at 687. In addition, a petitioner must prove prejudice. In order to do so,

the petitioner must demonstrate that "counsel's errors were so serious as to deprive

[petitioner] a fair trial, a trial whose result is reliable." *Id.* Thus, a petitioner must show a

reasonable probability that, but for counsel's "unprofessional errors, the result of the

proceeding would have been different. A reasonable probability is sufficient to

undermine confidence in the outcome." *Id.* at 694. This determination must be made in

light of "the totality of the evidence before the judge or jury." *Id.* at 695.

The United States Court of Appeals for the Third Circuit has cautioned that

"[o]nly the rare claim of ineffectiveness should succeed under the properly deferential

---

[2]      In *Harrington v. Richter*, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011), the United States Supreme
Court reaffirmed the continued applicability of the *Strickland* standard in federal habeas corpus cases.   *See
also Premo v. Moore*, 131 S. Ct. 733, 178 L. Ed. 2d 649 (2011).

standard to be applied in scrutinizing counsel's performance." *Beuhl v. Vaughn*, 166 F.3d 163, 169 (3d Cir.), *cert. denied*, 527 U.S. 1050 (1999) (quoting *U.S. v. Gray*, 878 F.2d 702, 711 (3d Cir. 1989)). Under the revised habeas corpus statute, such claims can succeed only if the state court's treatment of the ineffectiveness claim is not simply erroneous, but objectively unreasonable as well. *Berryman v. Morton*, 100 F.3d 1089, 1103 (3d Cir. 1996). Recently, the Supreme Court acknowledged that "[s]urmounting *Strickland*'s high bar is never an easy task." *Premo v. Moore*, 131 S. Ct. 733, 739 (2011) (quotation omitted). The Supreme Court explained that the relevant "question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Id.* at 740 (citing *Strickland*, 466 U.S. at 690).

Petitioner must show not only that counsel's conduct was improper, but also that it amounted to a constitutional deprivation.   Petitioner must also show that the prosecutor's acts so infected the trial as to make his conviction a denial of due process. *Greer v. Miller*, 483 U.S. 756, 765 (1987) (citation omitted). Petitioner must show that he was deprived of a fair trial. *Smith v. Phillips*, 455 U.S. 209, 221 (1982); *Ramseur v. Beyer*, 983 F.2d 1215, 1239 (3d Cir. 1992), *cert. denied*, 508 U.S. 947 (1993) (citations omitted) (stating court must distinguish between ordinary trial error, and egregious conduct that amounts to a denial of due process).

Where the state court has already rejected an ineffective assistance of counsel claim, a federal court must defer to the previous decision, pursuant to 28 U.S.C. § 2254(d)(1).   If a state court has already rejected an ineffective-assistance claim, a federal

court may grant habeas relief if the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Where the state court's application of governing federal law is challenged, it must be shown to be not only erroneous, but objectively unreasonable. *Yarborough v. Gentry*, 540 U.S. 1, 4, 124 S. Ct. 1 (2003) (*per curiam*) (citations omitted). The Supreme Court recently elaborated on this standard:

> Establishing that a state court's application of *Strickland* was unreasonable under §2254(d) is all the more difficult.   The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.*, at 689; *Lindh v. Murphy*, 521 U.S. 320, 333 n. 7, 117 S. Ct. 2059 . . . , and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S. at 123, 129 S. Ct. at 1420.   The *Strickland* standard is a general one, so the range of reasonable applications is substantial.   556 U.S. at 123, 129 S. Ct. at 1420.   Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).   When § 2254(d) applies, the question is not whether counsel's actions were reasonable.   The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Premo*, 131 S. Ct. at 740 (citations omitted).

## III.   **DISCUSSION.**

### A.   **Ineffective Assistance – Aggravated Assault**

Petitioner first claims that trial, direct appeal and PCRA counsel were ineffective for failing to argue that the prosecution failed to prove beyond a reasonable doubt all elements of the crime of aggravated assault. Aggravated assault is defined in 18 Pa. C.S. § 2702(a)(2) as attempting to cause "or intentionally, knowingly or recklessly caus[ing] serious bodily injury to "any of the officers, agents, employees or other persons enumerated in subsection (c)…while in the performance of duty."

13

Petitioner contends that the Commonwealth was required to find that the victim, Mr. Kelley, was a police officer assaulted in the performance of his duty pursuant to 18 Pa. C.S.A. 2702(a)(2). He further contends that Mr. Kelley was legally recognized as a "Security Officer" and not a "Police Officer" under state statute and points to *Philadelphia Housing Authority v. Commonwealth Labor Relations*, 499 A.2d 294 (Pa. 1985), arguing that one of the holdings in that case is that Philadelphia Housing Authority ("PHA") "Security Officers" are not police officers. According to Petitioner, Mr. Kelley was a security officer, not a police officer, therefore Petitioner could not be convicted of aggravated assault.

This claim is unexhausted and procedurally defaulted.   Petitioner admits that this claim is unexhausted, but he argues that although he included this issue in his *pro se* PCRA petition, PCRA counsel was ineffective for failing to include the claim in his Amended PCRA petition. Pet. at 9. In *Martinez v. Ryan*, 566 U.S. 1 (2012), the Supreme Court recognized a "limited exception" to the usual procedural default rules in holding that ineffective assistance of trial-court-level state postconviction counsel, even though not itself a claim to relief from one's conviction, can constitute "cause" for the procedural default of a "substantial" claim of ineffective assistance at trial.

To the extent that Petitioner is challenging direct appeal counsel's failure to litigate the claim of evidentiary insufficiency on appeal, any such claim fails because *Martinez* applies only to defaulted claims of ineffective assistance at trial and not to defaulted claims of ineffective assistance on direct appeal. *See Davila v. Davis*, 137 S. Ct. 2058 (2017).

14

Petitioner contends in his Traverse that the underlying ineffective assistance of trial counsel claim was "substantial" as required by *Martinez* because he contends that in *Commonwealth Labor Relations*, 499 A.2d 294, the Pennsylvania Supreme Court held that PHA security officers are not considered police officers.

In *Commonwealth Labor Relations*, the Housing Police Association argued that its members who are the security officers employed by the Philadelphia Housing Authority ("PHA"), are covered by the provisions of the Act of June 24, 1968, P.L. 237, as amended, 43 P.S. § 217.1 *et seq.* ("Act 111").   Act 111 provides generally for collective bargaining between policemen and firemen and their public employers and, in the event of a bargaining impasse, for compulsory and binding arbitration with no right to strike. In 1970, the Pennsylvania Legislature enacted a statute governing collective bargaining in the public sector, the Public Employe Relations Act of 1970 ("PERA"), sometimes referred to as "Act 195." This Act excluded from the definition of employees covered by the Act those employees covered under Act 111.   *Id.* at 298. In *Commonwealth Labor Relations*, the Pennsylvania Supreme Court held that the PHA does not fall within the broader term of "political subdivision of the Commonwealth," therefore it does not fall within the definition of "Commonwealth" and it is not a public employer under the terms of Act 111. *Id.* at 301.

Plaintiff contends that the following language in a footnote of the opinion is the court's holding and the Pennsylvania Supreme Court "ruled that the Philadelphia Housing Authority 'Security Officers' were **<u>NOT</u>** police officers:"

> . . . House Bill 200, which ultimately became subsections (ee) and (ff) of the Housing Authorities Law, Act of May 28, 1937, P.L. 955, § 10, as

> amended, 35 P.S. § 1550(ee), (ff) (Supp. 1985), was amended to give PHA
> the power to appoint "security officers" rather than "police officers."

Traverse, pp. 5-6 (quoting C*ommonwealth Labor Relations Bd.*, 499 A.2d at 300 n.4).   In

a later footnote of the opinion, also cited by Petitioner, the Pennsylvania Supreme Court

noted that:

> **There is an implicit suggestion that PHA security officers**
> **substitute for the Philadelphia police in these public housing units. We**
> **note that the responsibility for police protection within the city limits,**
> **including the housing projects, is vested in the City's police force.** *See*
> Philadelphia Home Rule Charter § 5.5–200, 201, 351 Pa.Code §
> 5.5–200351 Pa.Code § 5.5–200, 201201. **The PHA is designed to**
> **augment and not to replace the Philadelphia Police Force in these**
> **areas. This augmentation is justified by the greater incidence of**
> **criminal activity within these areas. To allow the PHA security force**
> **to replace the Philadelphia Police Force in these areas defeats the**
> **purpose of the creation of this security force.**

*Id.* at 300 n.7 (emphasis added).

Petitioner's legal theory that Philadelphia housing authority police officers are not

"police officers" under 18 Pa. C.S. § 2702(c)(1) is novel. In making this claim, Petitioner

does not consider the statutory provision that grants authority to the housing authority in

Philadelphia, including the power to appoint security officers as follows:

> (ff) In the city of the first class, **to appoint security officers who shall**
> **have the same rights, powers and duties as police officers in the**
> **Commonwealth in and upon the grounds and buildings of the**
> **Authority and in instances of hot pursuit within the boundaries of the**
> **city of the first class and who shall be authorized to arrest persons for**
> **the commission of any offense and the keepers of the jails and other**
> **places of detention in the city of the first class shall receive all persons**
> **arrested by such security officers for purposes of detention until they**
> **are dealt with according to law: Provided**, however, **That such security**
> **officers successfully complete the course of instruction provided under**
> **the act of June 18, 1974 (P.L. 359, No. 120), referred to as the**
> **Municipal Police Education and Training Law**. The Authority shall, to
> the maximum extent practicable, give preference in hiring security officers

16

> first to any person living in public housing and receiving any form of State
> or Federal public assistance, and second, to any other person living in
> public housing.

35 Pa. Stat. Ann. § 1550 (ff) (emphasis added). The jury heard evidence about Mr.

Kelley's training, authority, and responsibilities as a housing authority police officer and

found that Petitioner shot a person fitting that description. N.T. 6/5/09, at 28-29 (victim

noting that he attended and graduated from the Philadelphia Police Academy, had been

"trained by the same police who train the Philadelphia Police officers," had to "go back

to the police department for…yearly re-certification," and that he and his colleagues

generally did "everything that the Philadelphia Police do.…[i]t's just that we are

employed by the Housing Authority"); *id*. at 29 (victim was working "in full police

uniform" at the time of the offenses); *id.* at 32-33 (details of victim's police uniform,

including ballistics vest, and contents of victim's belt, including holstered service

firearm, handcuffs, and pepper spray); *id.* at 30-31 (noting that victim and other housing

authority police officers work in conjunction with their Philadelphia Police Department

counterparts).

Petitioner claims that trial counsel was ineffective for failing to contend that the

evidence was insufficient to sustain his aggravated assault conviction. Under 18 Pa. C.S.

§ 2702(a)(2), the prosecution was required to prove beyond a reasonable doubt that

Petitioner "attempt[ed] to cause or intentionally, knowingly or recklessly cause[d] serious

bodily injury to any…officer[], agent[], employee[] or other person[] enumerated in

subsection (c)…while in the performance of duty."   Respondents note that the list of

public officials and employees covered under 18 Pa. C.S. § 2702(c) is extensive, covering

explicitly a wide array of public officials and employees ranging from Pennsylvania's

Governor, 18 Pa. C.S. § 2702(c)(28), to teachers, *id.* § 2702(c)(27).   Undermining

Petitioner's contention that Pennsylvania's courts would have interpreted 18 Pa. C.S. §

2702(c) as excluding housing authority police officers from its coverage is Section

2702(c)(20), which covers "[a]ny person employed to assist or who assists any Federal,

State or local law enforcement official." *See also Commonwealth v. McFadden*, 156 A.3d

299, 308 (Pa. Super. Ct.) (holding that Philadelphia school crossing guards were

"person[s] employed to assist or who assist[]…Federal, State or local law enforcement

official[s]," for purposes of § 2702(c), reasoning, among other things, that Philadelphia

crossing guards "may be subject to the same rules of conduct applicable to City police

officers"), *appeal denied*, 170 A.3d 993 (Pa. 2017); *McKinley v. Commonwealth*, 769

A.2d 1153, 1159 (Pa. 2001) (concluding that airport authority police officer, who had

authority to make arrests for any offense, was "police officer" for purposes of state

implied consent law, while holding particular arrest unlawful because it was conducted

outside of airport authority jurisdiction). Respondents note, and this Court agrees, that it

would be illogical to treat § 2702(c) as excluding housing authority police officers from

the definition of "police officer" when the legislature made clear its intent to include

within the scope of § 2702(c) almost every public employee or officer with law

enforcement responsibilities.

       Petitioner contends that trial counsel failed to anticipate a legal development that

has not occurred and there is little reason to believe will occur in the future. He cites no

decision of any trial or appellate court that interprets the definition of "police officer" in

18 Pa. C.S. § 2702 in accordance with his interpretation. Petitioner has also not suggested any reason to believe that if the state courts were presented with this issue, they would hold that housing authority police should be excluded from the treatment applied to assaults committed on other public officers and employees in the course of their duties.

Because this claim lacks merit, Petitioner has not shown a substantial claim of ineffective assistance at trial for not presenting the claim. Because the ineffective assistance of trial counsel claim fails, the claim that PCRA counsel was ineffective for failing to present an ineffective assistance of trial counsel claim is also meritless. *See, e.g., Ross v. Dist. Att'y of Allegheny Cty.*, 672 F.3d 198, 211 n.9 (3d Cir. 2012) (failing to raise meritless claim cannot be considered ineffective assistance).

There is no reasonable likelihood that the state courts, acting reasonably and in accordance with law, would have held that a housing authority law-enforcement officer with "the same rights, powers and duties as [a] police officer" is not a "police officer" for purposes of 18 Pa. C.S. § 2702(c), and that counsel was ineffective for failing to present this argument.   Thus, it is respectfully recommended that this claim should be denied.

### B.      Ineffective Assistance - Limiting Instruction

Petitioner's second ineffective assistance of counsel claim concerns the reference in his confession to his prior "stolen car case" and resulting restitution obligation.   This claim was exhausted in the state court.   Although Petitioner's counsel attempted at trial to argue against the admissibility of the reference to the stolen car case, the state courts held as a matter of state law that it was relevant and properly admitted because Petitioner confessed that his restitution obligation was his motive for committing the charged

offenses. N.T. 6/9/09, at 43-45; Resp., Ex. A at 6; Resp., Ex. B at 4.   Petitioner told the

police that his intent was to take Mr. Kelley's laptop computer and gun and sell them to

satisfy his restitution obligation in the stolen car case. N.T. 6/9/09, at 57-58.   He

contends that trial counsel rendered ineffective assistance by declining the court's offer of

a limiting instruction that evidence of and references to the "stolen car case" and his

restitution obligation could be considered only for that purpose.

      Petitioner presented this claim in his Amended PCRA petition. Judge Bright as

the PCRA court held:

> In his Amended PCRA Petition, however, Appellant alleges that
> [trial] counsel rendered ineffective assistance for not requesting a jury
> instruction regarding the purpose for which evidence of other crimes was
> admitted at trial.   This allegation is without merit.
>
> .   .   .   .   .
>
> In the case *sub judice*, the Court offered Appellant the opportunity
> to have the jury instructed that it could not consider his prior conviction as
> evidence of his guilt.   After conferring with counsel, Appellant declined
> to request the jury instruction.   Clearly, this was a strategic decision made
> by trial counsel in conjunction with the appellant.   There was a reasonable
> basis for declining to request a cautionary instruction regarding his prior
> conviction.   Such an instruction would serve only to highlight any
> prejudice redounded to his detriment from counsel's decision not to
> request a cautionary instruction.   Appellant's claim of ineffectiveness is
> without merit and error was not committed.

Resp., Ex. C, pp. 5-6.   On PCRA appeal, the Pennsylvania Superior Court affirmed the

PCRA court, offering the following analysis:

> Appellant raises the following issue for our review: "Was trial
> counsel ineffective where they [sic] failed to request a jury instruction
> explaining to the jury the purpose for which they were to consider
> evidence of other crimes?" Appellant's Brief at 6. Appellant contends that
> "[t]rial counsel had no reasonable basis for not ... requesting an
> appropriate instruction during the Court's closing charge." *Id.* at 15. He

argues that "[a]ppellate courts have previously held that when bad acts evidence is admitted at trial an instruction is necessary to explain the limited purpose for which the evidence was admitted[.]" *Id.* He asserts Appellant was prejudiced by counsel's failure to request the instruction. *Id.* at 16.

Our standard of review from the denial of relief under the PCRA is well-settled:

> [A]n appellate court reviews the PCRA court's findings to see if they are supported by the record and free from legal error. This Court's scope of review is limited to the findings of the PCRA court and the evidence on the record of the PCRA court's hearing, viewed in the light most favorable to the prevailing party.

*Commonwealth v. Fahy*, 959 A.2d 312, 316 (Pa. 2008) (quotation marks and citations omitted).

To be eligible for PCRA relief, [a]ppellant must prove by a preponderance of the evidence that his conviction or sentence resulted from one or more of the enumerated circumstances found at 42 Pa.C.S. § 9543(a)(2) (listing, *inter alia*, the ineffective assistance of counsel and the unavailability at the time of trial of exculpatory evidence, which would have changed the outcome of the trial had it been introduced). Further, [a]ppellant must demonstrate that the issues raised in his PCRA petition have not been previously litigated or waived. *Id.* § 9543(a)(3).... A PCRA claim is waived "if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state post[-]conviction proceeding." *Id.* § 9544(b)....

It is well-established that counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him. *Strickland v. Washington*, [ ] 104 S. Ct. 2052, [ ] (1984). This Court has characterized the *Strickland* standard as tripartite, by dividing the performance element into two distinct parts. *Commonwealth v. Pierce*, [ ] 527 A.2d 973, 975 ([Pa.] 1987). Thus, to prove counsel ineffective, [a]ppellant must demonstrate that: (1) the underlying legal issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) [a]ppellant was prejudiced by counsel's act or omission. *Id.* at 975.

Relating to the reasonable basis prong, "[g]enerally, where matters of strategy and tactics are concerned, counsel's assistance is deemed

constitutionally effective if he chose a particular course that had some reasonable basis designed to effectuate his client's interests." Courts should not deem counsel's strategy or tactic unreasonable "unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued." *Id.* Also "[a]s a general rule, a lawyer should not be held ineffective without first having an opportunity to address the accusation in some fashion. ... The ultimate focus of an ineffectiveness inquiry is always upon counsel, and not upon an alleged deficiency in the abstract."

Relating to the prejudice prong of the ineffectiveness test, the PCRA petitioner must demonstrate "that there is a reasonable probability that, but for counsel's error or omission, the result of the proceeding would have been different." Particularly relevant herein, it is well-settled that "a court is not required to analyze the elements of an ineffectiveness claim in any particular order of priority; instead, if a claim fails under any necessary element of the *Strickland* test, the court may proceed to that element first."

*Commonwealth v. Koehler*, 36 A.3d 121, 131–32 (Pa. 2012) (some citations omitted).

In reviewing the propriety of an order denying PCRA relief, this Court is limited to examining whether the evidence of record supports the determination of the PCRA court, and whether the ruling is free of legal error. Great deference is given to the findings of the PCRA court, which may be disturbed only when they have no support in the certified record.

*Commonwealth v. Perry*, 959 A.2d 932, 934–35 (Pa. Super. 2008) (citations omitted).

In *Commonwealth v. Spotz*, 870 A.2d 822 (Pa. 2005), our Pennsylvania Supreme Court opined: "Objections sometimes highlight the issue for the jury, and curative instructions always do." *Id.* at 832; *accord Commonwealth v. Washington*, 927 A.2d 586, 606 (Pa. 2007).

In the case sub judice, the trial court opined:

[T]he [c]ourt offered Appellant the opportunity to have the jury instructed that it could not consider his prior conviction as evidence of his guilt. After conferring with counsel, Appellant declined to request the jury instruction.

22

... There was a reasonable basis for declining to request a cautionary instruction regarding his prior conviction. Such an instruction would serve only to highlight what was otherwise minimally significant evidence. Moreover, Appellant failed to plead and prove that any prejudice redounded to his detriment from counsel's decision not to request a cautionary instruction. Appellant's claim of ineffective assistance is without merit and error was not committed.

Trial Ct. Op., 3/4/16, at 6 (emphasis added). We agree no relief is due. The court recessed the jury and stated as follows:

The Court: Counsel, basically what I am going to read is: There was evidence tending to prove that the defendant has a prior criminal matter involving car theft. That was referenced in defendant's statement to police. This evidence is not evidence of the defendant's guilt and you must not infer guilt from the evidence of a prior criminal matter. This evidence may be considered by you for one purpose only: That is, to help you judge whether or not there was potential for commission of the crime for which the defendant is currently on trial. That's basically what I am going to read.

[Defense counsel]: Your Honor, I would just ask that it not be read in general, just in terms of confusion.

The Court: So you don't want the instruction at all?

[Defense counsel]: Your Honor, it's a situation where, once again, it's not a conviction. It's not something —

The Court: I understand. Do you want an instruction or you do not want an instruction, or we can cut it off?   There was evidence tending to prove that [Appellant] has a prior criminal matter involving car theft. That was referenced in [Appellant's] statement to police. This evidence is not evidence of [Appellant's] guilt and you must not infer guilt from the evidence of a prior criminal matter. Then the only purpose would be to help them assess motive. We could leave that part out or —

[Defense counsel]: Let me just confer with my client.

23

The Court: Yes. Go ahead.

[Defense counsel]: Thank you, Your Honor. Your Honor, I ask that it not be given.

The Court: Very well. Commonwealth, you concur? You concur? They do not wish to have this instruction.

[The Commonwealth]: It's up to him. It's totally his decision.

The Court: Very well.

N.T., 6/10/09, at 26-28.

We discern no error by the PCRA court. Appellant has not satisfied the prejudice prong of the ineffective assistance of counsel test. *See Koehler*, 36 A.3d at 131-32. He has not shown that but for counsel's action the result of the proceedings would have been different. *See id.* The record supports the determination of the PCRA court. *See Perry*, 959 A.2d at 934–35. Therefore, his ineffective assistance of counsel claim is without merit. *See Koehler*, 36 A.3d at 131–32. Accordingly, we affirm the order of the PCRA court.

*Commonwealth v. Boddy-Johnson*, No. 3029 EDA 2015, 2017 WL 1050407, at *4-6 (Pa.

Super. Ct. Mar. 20, 2017); Resp., Ex. D.

Where the state court has already rejected an ineffective assistance of counsel

claim, a federal court must defer to the previous decision, pursuant to 28 U.S.C. §

2254(d)(1). If a state court has already rejected an ineffective-assistance claim, a federal

court may grant habeas relief if the decision was "contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). *See also Vega v. Klem*, No.

CIV.A. 03-5485, 2005 WL 3216738, at *6 (E.D. Pa. Nov. 29, 2005) (citing 28 U.S.C. §

2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 404-405 (2000); *Fountain v. Kyler*, 420

F.3d 267, 272-273 (3d Cir. 2005)). Where the state court's application of governing federal law is challenged, it must be shown to be not only erroneous, but objectively unreasonable. *Yarborough v. Gentry*, 540 U.S. 1, 4, 124 S. Ct. 1 (2003) (*per curiam*) (citations omitted).

Under *Strickland*, counsel is presumed effective and to prevail on an ineffectiveness claim, a petitioner must "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689    It is undisputed that counsel made the final decision to decline the limiting instruction only after conferring with Petitioner. Counsel's trial strategy was that Petitioner lacked the specific intent to kill Mr. Kelley, which was.necessary to sustain a conviction for attempted murder.   Petitioner does not challenge the reasonableness of the strategy of conceding that he committed the acts for which he was on trial.

Petitioner contends that he suffered actual prejudice by counsel's omission because it may have created a reasonable probability that the jury utilized the evidence of the prior crime in an improper way.   *See* Traverse, pp. 10-11. However, Petitioner's prior auto theft imputed nothing about whether Petitioner acted with the intent to kill Mr. Kelley. Trial counsel reasonably could have viewed a limiting instruction as a reminder to the jury of Petitioner's previous criminal activity or a distraction from the strategy of contesting only Petitioner's intent to commit murder. The indication that Petitioner's previous issue with the law involved a restitution debt over the theft of an automobile was consistent with the defense theory that Petitioner's intent in this case was to commit

a robbery but not a murder, which is presumably why counsel, after consulting with Petitioner, declined the instruction.   Nothing in the appellate court's analysis disapproves or is inconsistent with the Common Pleas Court's reasoning.   The Common Pleas Court described the reference to Petitioner's "stolen car case" as "minimally significant" under the circumstances of the case and the state courts reasonably concluded that Petitioner failed to show at least a reasonable probability that the outcome of the trial would have been different had counsel accepted the offer of a limiting instruction. Resp., Ex. C at 6; Ex. D at *6.   Because trial counsel's strategy was to contest only whether Petitioner possessed the intent to kill, the state courts reasonably rejected Petitioner's claim that trial counsel was ineffective for declining a limiting instruction about Petitioner's "stolen car case."

In the present case, Petitioner has not identified any decision of the trial court or the appellate court which is contrary to, or an unreasonable application of, Sixth Amendment jurisprudence. Petitioner, therefore, does not meet his burden of proving ineffective assistance of counsel on this claim and it is recommended that this claim should be denied.

### C.    Certificate of Appealability.

The court must also determine whether to recommend granting a certificate of appealability ("COA") with respect to the Petitioner's claims. A COA can issue if "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and [if] jurists of reason would find it debatable whether the district court was correct in its [] ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The

Court is of the view that reasonable jurists would not debate the court's determinations, and a COA should not be granted.

**IV.**   <u>**CONCLUSION**</u>

Petitioner's claim that trial counsel was ineffective for failing to contest the aggravated assault charge on the theory that a housing authority police officer is not a "police officer" is procedurally defaulted and lacks merit. In addition, the state courts reasonably rejected Petitioner's claim that trial counsel was ineffective for declining a limiting instruction about Petitioner's "stolen car case," given counsel's strategy of contesting only whether Petitioner had the requisite intent to kill to sustain an attempted murder conviction.

For the above reasons, I make the following:

## RECOMMENDATION

AND NOW, this 16th day of November, 2020, IT IS RESPECTFULLY

RECOMMENDED that the instant Petition for Writ of Habeas Corpus filed pursuant to

28 U.S.C. § 2254 should be DENIED with prejudice and DISMISSED without an

evidentiary hearing.   There is no probable cause to issue a certificate of appealability.

The Petitioner may file objections to this Report and Recommendation. *See* Local

Civ. Rule 72.1.   Failure to timely file objections may constitute a waiver of any appellate

rights.

BY THE COURT:


__/s/ Henry S. Perkin_____
HENRY S. PERKIN
United States Magistrate Judge